MARK BRNOVICH
Attorney General
Firm Bar No. 14000

Louis Caputo (025398)
Aubrey Joy Corcoran (025423)
Kevin D. Ray (007485)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, AZ 85004
Telephone (602) 542-8349
EducationHealth@azag.gov
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Arizona Center for Disability Law,

Plaintiff,

v.

Cara M. Christ, in her official capacity as Director of the Arizona Department of Health Services; and Aaron Bowen, in his official capacity as Superintendent and Chief Executive Officer of the Arizona State Hospital,

Defendants.

Case No. 2:18-cv-02854-BSB

**ANSWER TO COMPLAINT**

Dr. Cara M. Christ, in her official capacity as Director of the Arizona Department of Health Services, and Dr. Aaron Bowen, in his official capacity as Superintendent and Chief Executive Officer of the Arizona State Hospital ("Defendants"), hereby respond to the Complaint filed by Arizona Center for Disability Law ("ACDL"), on September 12, 2018, and admit, deny, and affirmatively allege as follows:

**JURISDICTION AND VENUE**

1. Responding to paragraph 1 of the Complaint, Defendants admit this Court has jurisdiction over this matter.

2. Defendants admit that venue is proper.

**PARTIES**

3. Defendants admit that designated protection and advocacy systems have authority related to persons with mental illness under 42 U.S.C. § 10801 *et seq.* Defendants are without sufficient knowledge as to the truth of the remaining allegations contained in paragraph 3 of the Complaint and therefore deny the same.

4. Responding to the allegations contained in paragraph 4 of the Complaint and all subparts thereto, Defendants admit that Dr. Christ is the Director of the Arizona Department of Health Services, and aver that Arizona law speaks for itself.

5. Responding to the allegations contained in paragraph 5 of the Complaint and all subparts thereto, Defendants admit that Dr. Bowen is the Superintendent and Chief Executive Officer of the Arizona State Hospital (the "Hospital"), and aver that Arizona law speaks for itself.

**STATEMENT OF FACTS**

6. Defendants admit that the Hospital treats patients with significant mental health concerns, but are without sufficient knowledge as to the truth of the allegations contained in paragraph 6 of the Complaint because they are vague and ambiguous, and therefore deny the same. Additionally, Defendants are unclear whether "Arizona residents with mental illness" is intended to be a specific term. Further, Arizona law does not require patients to be Arizona residents.

7. Responding to the allegations contained in paragraph 7 of the Complaint, Defendants aver only that the Arizona law speaks for itself.

8. Defendants deny the allegation contained in paragraph 8 of the Complaint. The Hospital has three licensed facilities on its campus in which patients and other committed persons reside. One such facility is for patients committed under Title 36,

Chapter 5 of the Arizona Revised Statutes. Another facility is for patients committed under Title 13, Chapter 5 of the Arizona Revised Statutes. The third facility, the Arizona Community Protection and Treatment Center houses and treats persons who are committed as sexually violent persons under Title 36, Chapter 37 of the Arizona Revised Statutes.

9. Defendants admit that the civil hospital facility has 116 licensed beds.

10. Defendants deny, in part, the allegations contained in paragraph 10 of the Complaint. Patients may also be gravely disabled and mandatory local treatment may be waived.

11. Defendants admit that the forensic hospital facility has 143 licensed beds. Defendants are without sufficient knowledge as to whether “adults with mental illness” is intended to be a specific term, and therefore deny any specific meaning implied. Defendants also specifically deny, in part, however, the allegations contained in Paragraph 11 of the Complaint insofar as paragraph 11 equates an “adult with mental illness” with a person committed under Title 13 simply because a person was adjudicated “guilty except insane” under A.R.S. § 13-502(D). Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 11 of the Complaint because they are vague and/or ambiguous, and therefore deny same.

12. Defendants admit that the Hospital has a restoration program in which Hospital staff will evaluate and treat criminal defendants who have been found to be “incompetent to stand trial” and are restorable within statutory timeframes pursuant to Title 13 of the Arizona Revised Statutes and Rule 11 of the Arizona Rules of Criminal Procedure. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 12 of the Complaint because they are vague and/or ambiguous, and therefore deny same.

13. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 13 of the Complaint because they are vague and ambiguous, and therefore deny the same. Defendants also specifically deny, however,

the allegations contained in paragraph 13 of the Complaint insofar as paragraph 13 equates a "individuals with mental illness" with persons committed under Title 13 simply because a person was adjudicated "guilty except insane" under A.R.S. § 13-502(D). Moreover, patients committed under a GEI order may not necessarily reside at the Hospital, but could be released to the community pursuant to A.R.S. § 13-3994.

14. Defendants deny the allegation contained in paragraph 14 of the Complaint. Specifically, while authorized protection and advocacy systems play an important role advocating for persons with mental illness, all Hospital patients have competent counsel who regularly advise them and represent them in all court proceedings and matters before the Psychiatric Security Review Board. Many Hospital patients also have individual advocates, personal representatives, other attorneys, and/or guardians who independently protect their interests.

## I. DENIAL OF PLAINTIFF'S ACCESS TO ASH RESIDENTS AND FACILITIES

15. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 15 of the Complaint because they are vague and/or ambiguous, and therefore deny the same. Defendants aver only that the law speaks for itself.

16. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 16 of the Complaint because they are unclear, vague, and/or ambiguous, and Defendants therefore deny the same. Defendants aver only that the law speaks for itself.

17. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 17 of the Complaint because they are unclear, vague, and/or ambiguous, and Defendants therefore deny the same. Defendants aver that the law speaks for itself.

18. Responding to the allegations contained in paragraph 18 of the Complaint, Defendants aver that the law speaks for itself. Defendants specifically deny that ACDL's

interpretation of "reasonable, unaccompanied access" is accurate. ACDL essentially equates "reasonable, unaccompanied access" with "unfettered and unsecured access" to Hospital facilities and patients. As examples, ACDL has demanded that the Hospital provide it with keys to its facilities and allow it to travel throughout Hospital facilities generally without escort, and argues that it can visit patients regardless of their clinical status (i.e. if the doctors and treatment staff think patients are too symptomatic and/or dangerous). Moreover, ACDL's requests for access have, at times, demonstrated a fundamental misunderstanding of the nature, breadth, and effects of patients' mental disorders, which directly relate to the reasonableness of any access request. Nevertheless, the Hospital has worked in good faith with ACDL, made accommodations for ACDL's access, and continually permitted ACDL access pursuant to PAIMI and applicable regulations. ACDL's inaccurate interpretation of its access authority underlies the Complaint's allegations and Defendants' responses to those allegations.

Since 2015, ACDL has accessed the Hospital's patients, facilities, and records. That access continues now. In fact, representatives from ACDL and the Hospital regularly communicate regarding access to Hospital patients, facilities, and records. ACDL representatives access the Hospital for multiple hours at a time, including one visit lasting seven hours. ACDL has even described that the Hospital has been "very cooperative with [its] monitoring visits." This lawsuit is unnecessary and is not about whether ACDL has access to Hospital patients, facilities, and records, but whether it can have virtually any access it wants based on its own self-created criteria and timing, which no court or other authority has ever authorized.

19. Responding to the allegations contained in paragraph 19 of the Complaint, Defendants aver that the law speaks for itself. ACDL, however, routinely waits unreasonable amounts of time to allege denials of access to the Hospital and unilaterally ceases discussion on those issues for months at a time. This not only impairs the Hospital's ability to ascertain the circumstances behind alleged denials, but prevents the Hospital from providing ACDL written reasons for any actual denials. For example, until

October 2016, the Hospital and ACDL were discussing the exact same peer review records that are the basis for its claim in this lawsuit. ACDL waited seven months until May 26, 2017, to send a letter to the Hospital to pick up discussion about the issue. ACDL demanded that the Hospital respond by June 15, 2017. The Hospital responded by letter on June 15, 2017. Saying that same day that it would "review the issues [the Hospital] raised and get back to [the Hospital] by the end of next week," ACDL waited eleven more months before resuming discussion on April 23, 2018. In a rare case where a genuine denial of access question was timely raised, the parties were able to resolve it through written discussion.

20. Defendants admit that the Hospital accommodated ACDL's access onto its campus on multiple occasions in 2016 for ACDL to conduct activities. Defendants currently have insufficient information concerning the specific number of those occasions, and so they deny those allegations. Defendants also deny that the Hospital refused to provide ACDL "reasonable, unaccompanied access." Further, contrary to the allegations in paragraph 20 of the complaint, ACDL stated in a letter to the Hospital on May 26, 2017, that it visited on "eight separate occasions," but that the Hospital denied "unaccompanied access" "during several [but not all], of those visits." In that same letter ACDL described only three instances that, per ACDL, alleged it was on the Hospital's campus and had been denied "reasonable, unaccompanied access." As an example, ACDL argued that it was denied access during a visit on August 2, 2016. ACDL, however, never informed Undersigned Counsel or the Hospital until its May 2017 letter that it had supposedly been denied access on that date. Further, counsel for the Hospital and ACDL communicated on August 2, 2016, after the visit had taken place, and ACDL raised no issues of being denied access and never asserted that it even asked the Hospital for reasonable unaccompanied access.

21. Defendants admit that ACDL Counsel sent a letter to the Hospital, in care of Undersigned Counsel, on May 26, 2017. As described earlier herein, ACDL waited approximately seven months to send that letter, which continued discussion of questions

raised the previous year. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 21 of the Complaint because they are unclear, vague, and/or ambiguous, and Defendants therefore deny the same.

22. In response to the allegations in paragraph 22 of the Complaint, Defendants admit that ACDL's May 26, 2017 letter recited federal law, but aver otherwise that the May 26, 2017 letter speaks for itself.

23. Defendants admit that on June 15, 2017, the Hospital, via Undersigned Counsel, responded to ACDL that the Hospital could not allow ACDL to have the unfettered and unmonitored access it sought, which was essentially absolute access to the Hospital's patients and facilities wherein ACDL's nonclinical staff would decide for itself when and under what conditions Hospital patients with severe mental health conditions could safely meet and interact. As an example, ACDL proposed that apparently all Hospital patients on "close observation" could meet with ACDL in a closed room when Hospital staff and security were outside of the room. ACDL's proposed access disregarded patients' level of current dangerousness, unique symptoms, and mental diagnoses, and it also placed the Hospital at risk of violating obligations to regulatory entities. Defendants are without sufficient information and knowledge as to the truth of any remaining allegations in paragraph 23 of the Complaint because they are unclear, vague, and/or ambiguous, and Defendants therefore deny the same.

24. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 24 of the Complaint related to the eight monitoring visits because they are vague and ambiguous, and therefore deny the same. Defendants deny, however, that the Hospital denied "reasonable, unaccompanied" access to ACDL. Moreover, and as described earlier herein, ACDL waited approximately eleven months until April 23, 2018, to allege any of the enumerated 2017 denials of access in paragraph 24 of the Complaint.

25. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 25 of the Complaint because they are vague and

ambiguous, and therefore deny the same. Defendants deny, however, that the Hospital denied "reasonable, unaccompanied" access to ACDL. Moreover, and as described earlier herein, ACDL waited approximately eleven months until April 23, 2018, to allege any of the enumerated 2017 denials of access contained in paragraph 25 of the Complaint.

26. Defendants are without insufficient information to admit or deny the allegation contained in paragraph 26 of the Complaint and therefore they deny same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

27. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 27 of the Complaint because they are vague and/or ambiguous, and therefore deny the same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

28. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 28 of the Complaint because they are vague and/or ambiguous, and therefore deny the same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

29. Defendants are without sufficient information and knowledge as to the truth of the allegations in paragraph 29 of the Complaint because they are vague and/or ambiguous, and therefore deny the same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

30. Defendants are without sufficient information to admit or deny the allegation contained in paragraph 30 of the Complaint related to communications between a Hospital patient and ACDL, and therefore deny same. Defendants deny that the Hospital denied "reasonable, unaccompanied" access to ACDL. Additionally, ACDL's April 23, 2018 letter to the Hospital did not allege any denial of access occurring on March 16, 2018.

31. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 31 of the Complaint because they are vague and ambiguous, and therefore deny the same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

32. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 32 of the Complaint because they are vague and ambiguous, and therefore deny the same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

33. Defendants are without sufficient information and knowledge as to the truth of the remaining allegations in paragraph 33 of the Complaint because they are vague and ambiguous, and therefore deny the same. Defendants specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

34. Defendants deny the allegations contained in paragraph 34 of the Complaint. Further, on August 8, 2018, an ACDL attorney representative, Anna Branson, conducted a monitoring visit of the Hospital's campus and spoke with patients. In the afternoon of August 8, 2018, and while waiting to attend a patient treatment meeting, Ms. Branson described unequivocally that her patient visits that day had gone "fine." She did not allege that she was denied access, and she otherwise raised no issues or problems. The next week, Ms. Branson alleged that a denial of access occurred. When asked for details about the alleged denial and why she gave a contrary answer the week before, Ms. Branson replied simply that it was "not the proper time or place to discuss the denial of access." There are other inconsistencies with Ms. Branson's accounting of events on August 8, 2018. Defendants specifically deny that ACDL's interpretation of "reasonable, unaccompanied access" is correct.

35. Defendants deny the allegation contained in paragraph 35 of the Complaint. Specifically, the Defendants deny that the Hospital denied ACDL "unaccompanied access," and therefore could not have failed to provide ACDL with "written statements"

of such denials. Defendants also specifically deny that ACDL's interpretation of "unaccompanied access" is correct.

**II. DENIAL OF PLAINTIFF'S ACCESS TO RECORDS**

36. Responding to the allegations contained in paragraph 36 of the Complaint Defendants aver only that the law speaks for itself.

37. Responding to the allegations contained in paragraph 37 of the Complaint and all subparagraphs thereto, Defendants aver that the law speaks for itself.

38. Responding to the allegations contained in paragraph 38 of the Complaint, Defendants aver that *Ariz. Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 693 (D. Ariz. 2000) speaks for itself.

39. Responding to the allegations contained in paragraph 39 of the Complaint, the allegations concern confidential and/or protected health information, and Defendants therefore deny the allegation contained in paragraph 39 of the Complaint.

40. Defendant is without sufficient knowledge as to the truth of the allegations contained in paragraph 40 of the Complaint and therefore denies the same. Further, the allegations concern confidential and/or protected health information, and Defendants therefore deny the allegation contained in paragraph 39 of the Complaint.

41. Responding to the allegations contained in paragraph 41 of the Complaint, the allegations concern confidential and/or protected health information, and Defendants therefore deny them. Defendants also specifically deny the allegations contained in paragraph 41 of the Complaint because ACDL submitted a records request on September 15, 2016.

42. Defendants admit that on October 28, 2016, Hospital counsel, on behalf of the Hospital, stated that it would not disclose peer review records to ACDL per its request. As described earlier herein, ACDL ceased communication and waited approximately seven months to re-raise the peer review records in question. Responding to the remaining allegations contained in paragraph 42 of the Complaint, the remaining

allegations concern confidential and/or protected health information, and Defendants therefore deny them.

43. Defendants admit that on May 26, 2017, ACDL sent a letter to the Hospital through Undersigned Counsel and that such letter requested peer review records and other information. ACDL waited approximately seven months after its previous communication about peer review records to send its May 26, 2017 letter. Defendants aver that the May 26, 2017 letter speaks for itself. Responding to the remaining allegations contained in paragraph 43 of the Complaint, the remaining allegations concern confidential and/or protected health information, and Defendants therefore deny them.

44. Defendants admit that on June 15, 2017, Undersigned Counsel, on behalf of the Hospital, responded to ACDL's May 26, 2018 letter. In the Hospital's response letter, the Hospital addressed ACDL's inaccurate definition of "reasonable, unaccompanied access" and said it would deny access to its peer review records. Responding to the remaining allegations contained in paragraph 44 of the Complaint, the allegations concern confidential and/or protected health information, and Defendants therefore deny them. Defendants deny any remaining allegations contained in paragraph 44 of the Complaint.

45. Defendants admit that ACDL sent letters to Defendants on April 23, 2018, that concerned, in part, access to peer review records. ACDL waited approximately eleven months after the last communication to continue discussion about the peer review records question, and then demanded that the Hospital respond to its letter within seven days or it would file a lawsuit. Defendants deny the remaining allegations contained in paragraph 45 of the Complaint.

46. Defendants admit that on May 7, 2018, the Hospital sent a letter in response to ACDL's April 23, 2018 letter. Defendants deny the remaining allegations contained in paragraph 46 of the Complaint. Specifically, ACDL's insinuation that the Hospital's May 7, 2018 letter ignored the subject of peer review records is false. ACDL stated that

it was unprepared to discuss the question of peer review records until another ACDL attorney returned to the Office. Accordingly, the Hospital's May 7, 2018 letter noted that the Hospital would "hold from further comment on this issue until you are able to discuss it." Moreover, the May 7, 2018 letter expounded on the Hospital's vulnerable patient population and Hospital programs, which could affect access to patients and facilities.

47. Defendants admit that their counsel met with ACDL counsel on June 26, 2018, and August 6, 2018. Defendants deny the remaining allegations contained in paragraph 47 of the Complaint. Namely, the Parties' interactions and negotiations were not confined to a discussion about peer review records or those two particular meetings. Rather, the Parties' interactions and negotiations included multiple communications by phone, letter, emails, and face-to-face meetings over several weeks. After the August 6 meeting, Undersigned Counsel asked ACDL Counsel's via email about potential legal arguments related to the peer review records.

48. Defendants deny, in part, the allegations contained in paragraph 48 of the Complaint. The Hospital did not deny access to non-peer review records.

## STATEMENT OF CLAIMS

### Count I. Defendants Continue to Deny Plaintiff Reasonable Unaccompanied Access to Arizona State Hospital Facilities and Residents in Violation of Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*

49. Paragraph 49 contains only a statement about ACDL's allegations, which does not require an admission or denial. To the extent that ACDL intended to make allegations in paragraph 49 of the Complaint, they are vague and/or ambiguous, and Defendants therefore deny them.

50. Responding to the allegations contained in paragraph 50 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "access" is accurate.

51. Responding to the allegations contained in paragraph 51 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "access" is accurate.

52. Responding to the allegations contained in paragraph 52 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "reasonable, unaccompanied access" is accurate.

53. Responding to the allegations contained in paragraph 53 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "reasonable, unaccompanied access" is accurate.

54. Responding to the allegations contained in paragraph 54 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "unaccompanied access" is accurate.

55. Responding to the allegations contained in paragraph 55 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL is entitled to the unfettered and unsecured access it seeks of the Hospital. Accordingly, Defendants deny the allegations contained in paragraph 55 and all subparts thereto.

56. Responding to the allegations contained in paragraph 56 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "reasonable, unaccompanied access" is accurate. Accordingly, Defendants deny the allegations contained in paragraph 56 and all subparts thereto.

57. Responding to the allegations contained in paragraph 57 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that ACDL's interpretation of "unaccompanied access" is accurate.

58. Defendants deny the allegations contained in paragraph 58 of the Complaint.

59. Responding to the allegations contained in paragraph 59 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that any delay or denial occurred.

60. Responding to the allegations contained in paragraph 60 of the Complaint, Defendants aver that the law speaks for itself. Defendants deny, however, that any delay or denial occurred.

61. Defendants deny the allegations contained in paragraph 61 of the Complaint.

62. Defendants deny the allegations contained in paragraph 62 of the Complaint.

63. Defendants deny the allegations contained in paragraph 63 of the Complaint.

**Count II. Defendants Continue to Deny Plaintiff Access to Records in Violation of Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. 10801 *et seq*.**

64. Paragraph 64 contains only a statement about the Complaint's previous allegations, which does not require an admission or denial. To the extent that ACDL intended to make allegations in paragraph 64, they are vague and ambiguous, and Defendants therefore deny them.

65. Responding to the allegations contained in paragraph 65 of the Complaint, Defendants aver that the law speaks for itself, but that under 42 U.S.C. § 10805, designated protection and advocacy systems have authority to "investigate incidents of abuse and neglect of individuals with mental illness" under only certain circumstances. Responding to the remaining allegations contained in paragraph 65 of the Complaint, Defendants submit that the allegations concern confidential information, and therefore Defendants deny them.

66. Responding to the allegations contained in paragraph 66 of the Complaint, Defendants submit that the allegations concern confidential information, and therefore Defendants deny them.

67. Defendants deny the allegations contained in paragraph 67 of the Complaint and all subparts thereto. Defendants submit that the allegations concern

confidential information, and therefore Defendants also deny them for that reason. Defendants aver that under PAIMI, ACDL is not entitled to peer review records when a patient and/or a patient's estate has a conservator, legal representative, and/or other similar representatives.

68. Defendants deny the allegations contained in paragraph 68 of the Complaint. Defendants submit that the allegations concern confidential information, and therefore Defendants also deny them for that reason. Defendants aver that under PAIMI, ACDL is not entitled to peer review records when a patient and/or a patient's estate has a conservator, legal representative, and/or other similar representatives.

69. Defendants deny the allegations contained in paragraph 69 of the Complaint. Defendants submit that the allegations concern confidential information, and therefore Defendants also deny them for that reason. Defendants aver that under PAIMI, ACDL is not entitled to peer review records when a patient and/or a patient's estate has a conservator, legal representative, and/or other similar representatives.

70. Defendants deny the allegations contained in paragraph 70 of the Complaint. Defendants submit that the allegations concern confidential information, and therefore Defendants also deny them for that reason. Defendants aver that under PAIMI, ACDL is not entitled to peer review records when a patient and/or a patient's estate has a conservator, legal representative, and/or other similar representatives.

71. Defendants deny the allegations contained in paragraph 71 of the Complaint. Defendants submit that the allegations concern confidential information, and therefore Defendants also deny them for that reason. Defendants aver that under PAIMI, ACDL is not entitled to peer review records when a patient and/or a patient's estate has a conservator, legal representative, and/or other similar representatives.

## **GENERAL DENIAL**

Unless specifically admitted above, Defendants deny each and every allegation contained in the Complaint.

**ANSWERING PLAINTIFF'S PRAYER FOR RELIEF**

Defendants deny that ACDL is entitled to the relief requested, or to any relief whatsoever.

**AFFIRMATIVE DEFENSES**

1. Plaintiff's claims fail, in whole or in part, to state a claim upon which relief may be granted.

2. Plaintiff's claims are moot.

3. Plaintiff's claims are barred for failure to resolve, or failure to seek a resolution of, disputes early in the protection and advocacy process and/or through a nonadversarial process involving negotiation, mediation, and/or conciliation; and/or for failing to involve family members, as appropriate, as required pursuant to PAIMI.

4. Plaintiff's claims are barred by the statute of limitations.

5. Plaintiff's claims are barred by the doctrine of laches.

6. Plaintiff is not entitled to relief because the records it seeks are privileged.

7. Plaintiff was not entitled to peer review records under PAIMI because the patient and/or patient's estate had a conservator, legal representative, and/or other similar representatives.

8. Plaintiff has waived claims regarding denials of reasonable, unaccompanied access.

9. Plaintiff is not entitled to declaratory and/or injunctive relief against the named Defendants.

10. Defendants have absolute and/or qualified immunity.

11. Plaintiff is not eligible for attorneys' fees.

12. Plaintiff is not eligible for consequential damages.

13. Plaintiff is not eligible for an award of taxable or any other costs.

14. Defendants additionally allege any other affirmative defenses that may come to light during discovery.

15. Defendants additionally allege all applicable affirmative defenses listed in Fed. R. Civ. P. 8(c) and 12(b), as well as any other affirmative defenses that may come to light during discovery.

RESPECTFULLY SUBMITTED this 13th day of November, 2018.

MARK BRNOVICH
Attorney General

By: s/ Louis Caputo
Louis Caputo
Aubrey Joy Corcoran
Kevin D. Ray
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85004
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants of record.

s/ Koren Lyons

#7361593