Asim Dietrich (Arizona Bar No. 027927)
Chris Carlsen (Arizona Bar No. 023608)
ARIZONA CENTER FOR DISABILITY LAW
5025 E. Washington Street, Suite 202
Phoenix, AZ 85034
Telephone:   (602) 274-6287
Facsimile:    (602) 274-6779
E-mail:         adietrich@azdisabilitylaw.org
                    ccarlsen@azdisabilitylaw.org
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Arizona Center for Disability Law,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Cara M. Christ, in her official capacity as Director of the Arizona Department of Health Services; and Aaron Bowen, in his official capacity as Superintendent and Chief Executive Officer of the Arizona State Hospital,<br><br>　　　　　　　DEFENDANTS. | No.<br><br>**AMENDED COMPLAINT** |

## INTRODUCTION

The Arizona Center for Disability Law ("ACDL") is Arizona's designated, federally funded Protection and Advocacy agency ("P&A"), which protects Arizonans with disabilities from abuse, neglect and discrimination and advocates for the legal rights of Arizonans with disabilities. ACDL seeks injunctive and declaratory relief against the Director of the Arizona Department of Health Services ("ADHS") and the Superintendent of the Arizona State Hospital ("ASH"), in their official capacities, for refusing to provide ACDL reasonable unaccompanied access to the facilities and patients of ASH, and for refusing to provide ACDL access to records of ASH residents, as authorized by federal law.

The refusal to grant ACDL reasonable unaccompanied access to the patients and facilities

of ASH, and the refusal to grant ACDL access to records, violates the rights guaranteed to ACDL pursuant to the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. § 10801 *et seq.* Plaintiff seeks reasonable unaccompanied access to the patients and facilities of ASH relevant to Plaintiff's monitoring and investigative activities, and access to records relevant to ACDL's investigations of incidents of abuse and neglect.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this case is brought pursuant to the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.*

2. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391 because: (1) Plaintiff is an entity with the capacity to sue in its common name under applicable law, which maintains its principal place of business in the District; (2) Defendants have sufficient contacts within this District to subject them to personal jurisdiction; and (3) the acts and omissions giving rise to this Complaint occurred within this District.

## PARTIES

### Plaintiff

3. Plaintiff, the Arizona Center for Disability Law (hereinafter, "Plaintiff") is Arizona's designated, federally funded, Protection and Advocacy (hereinafter, "P&A") system for Arizona residents with mental illness. Founded in 1995, ACDL receives federal funding pursuant to the Protection and Advocacy for Individuals with Mental Illness (hereinafter, "PAIMI") Act, 42 U.S.C. § 10801 et seq. ACDL investigates incidents of alleged abuse and neglect, monitors conditions at psychiatric facilities like the Arizona State Hospital (hereinafter, "ASH"), and advocates for the rights of persons with mental illness who reside in

psychiatric facilities and in the community.

<u>Defendants</u>

4. Defendant, Cara M. Christ, is the Director of the Arizona Department of Health Services (hereinafter "ADHS"), and has charge of ASH. See A.R.S. § 36-206. The duties of the Director of ADHS include:

    A. Adopting rules for inpatient treatment at ASH,

    B. Prescribing forms of complaints, certificates of mental illness and commitments,

    C. Adopting rules for the commitment of persons with mental illness to ASH, and

    D. Adopting rules for the administration of ASH. See A.R.S. § 36-204.

5. Defendant, Aaron Bowen, is the Superintendent and Chief Executive Officer of ASH, and supervises and directs ASH's activities. See A.R.S. § 36-206. In addition to supervising and directing ASH's activities, the duties of the Superintendent of ASH also include:

    A. Responsibility to the Director of ADHS for carrying out the purposes for which ASH is maintained,

    B. Subject to the approval of the Director of ADHS, deputizing any qualified officer of ASH to perform any act the Superintendent is empowered to do,

    C. Estimating the probable daily per capita cost of treatment and maintenance of ASH patients for each year and reporting that estimate to the Director of ADHS, and

    D. Providing the Director of ADHS a clinical assessment of ASH programs. See Id.

## STATEMENT OF FACTS

6. ASH is Arizona's State-operated locked psychiatric treatment facility, which

provides long-term inpatient psychiatric care to individuals, including persons with mental illness, who have been committed to ASH.

7. ASH is maintained "for the care and treatment of persons with mental disorders and persons with other personality disorders or emotional conditions who will benefit from care and treatment." A.R.S. § 36-202.

8. The ASH campus contains three licensed facilities.

9. One facility on the ASH campus is a facility that provides care and treatment for patients civilly committed to reside at ASH under Title 36, Chapter 5 of the Arizona Revised Statutes (hereinafter "ASH civil campus"). See A.R.S. § 36-501 et seq.

10. A second facility on the ASH campus is a facility that provides care and treatment for patients who have been committed to reside at ASH under Title 13, Chapter 5 of the Arizona Revised Statutes (hereinafter "ASH forensic campus"). See A.R.S. § 13-502.

11. A third facility on the ASH campus is the Arizona Community Protection and Treatment Center.

12. This Amended Complaint only pertains to ACDL's access to patients, facilities, and records at the ASH civil campus and ASH forensic campus.

13. The ASH civil campus is a 116-bed inpatient facility that provides care and treatment to adult patients who are civilly committed to receive treatment at the ASH civil campus pursuant to a court order.

14. A person with mental illness is civilly committed to receive treatment at the ASH civil campus if such individual is a danger to self, a danger to others, is persistently and acutely disabled, and/or is gravely disabled as a result of a mental illness; and has not responded to a minimum of 25 days of mandatory local treatment in a

community inpatient setting or mandatory local treatment for such person has been waived.

15. The ASH forensic campus is a 143-bed facility that provides care and treatment to adults who are committed to the forensic campus as a result of involvement with the criminal justice system.

16. The ASH forensic campus provides inpatient restoration-to-competency services, in which evaluation and treatment are provided to criminal defendants who have been found to be incompetent to stand trial and are restorable within the timeframes prescribed in Title 13 of the Arizona Revised Statutes and Rule 11 of the Arizona Rules of Criminal Procedure.

17. The ASH forensic campus also provides care and treatment to criminal defendants who are committed to the ASH forensic campus pursuant to a verdict of Guilty Except Insane.

18. The patients residing in the ASH forensic campus include individuals with mental illness.

19. Given the severity of their mental illnesses, many residents of ASH are unable to understand or enforce their rights without the benefit of Plaintiff's assistance and advocacy.

**I. DENIAL OF PLAINTIFF'S ACCESS TO ASH RESIDENTS and FACILITIES**

20. As Arizona's designated P&A agency for Arizonans with mental illness, Plaintiff receives federal funding pursuant to the PAIMI Act for Plaintiff to investigate incidents of abuse and neglect of individuals with mental illness, and protect and advocate for the rights of persons with mental illness. See 42 U.S.C. § 10801; 42 U.S.C § 10805(a)(1)(A).

21. Plaintiff has the authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment" in Arizona. 42 U.S.C. § 10805(a)(1)(B).

22. Plaintiff is also authorized to "have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3).

23. To fulfill its statutory authority, Plaintiff is authorized to have reasonable unaccompanied access to facilities and facility residents for the purposes of investigating incidents of abuse and neglect, providing information to facility residents regarding their rights and Plaintiff's services, monitoring compliance with respect to the rights and safety of residents, and inspecting all areas of the facility which are used by residents or are accessible to residents. See 42 C.F.R. § 51.42.

24. If a facility denies or delays Plaintiff's access to facilities, programs, residents or records covered by the PAIMI Act, such facility must promptly provide Plaintiff with a written statement of reasons for the denial or delay. See 42 C.F.R. § 51.43.

25. In 2016, Plaintiff visited ASH on eight separate occasions for the purposes of providing ASH resident patients information and training about their rights and the services that Plaintiff provides, and for the purpose of monitoring ASH's compliance with respect to the rights and safety of residents, and Plaintiff was denied unaccompanied access to ASH residents and facilities each time Plaintiff requested such access.

26. In an effort to resolve the denial of Plaintiff's unaccompanied access to ASH residents and facilities without litigation, Plaintiff sent a demand letter dated May 26, 2017 to counsel representing Defendants in issues relevant to the administration of ASH.

27. The May 26, 2017 demand letter explained ASH's legal obligations under the PAIMI Act to afford Plaintiff reasonable unaccompanied access to ASH facilities

      and residents, and requested that Plaintiff be granted reasonable unaccompanied access to ASH facilities and residents.

28. On June 15, 2017, Defendants' counsel responded to Plaintiff, stating that Plaintiff would not be granted unaccompanied access to any ASH facilities or residents.

29. Plaintiff was denied reasonable unaccompanied access to ASH facilities or residents during eight monitoring visits in 2017, which Plaintiff conducted on June 15, June 28, July 6, August 3, August 16, August 31, September 13 and September 27, 2017.

30. Defendants did not provide Plaintiff any written statements of reasons for the denial of unaccompanied access during these eight monitoring visits in 2017.

31. During Plaintiff's July 6, 2017 visit to ASH, the ASH Chief Quality Officer informed Plaintiff that ASH policy prohibits Plaintiff from having any unaccompanied access to any facilities or residents at ASH.

32. During Plaintiff's August 16, 2017 visit to ASH, the ASH Patient Rights Advocate also confirmed to Plaintiff that ASH policy prohibits Plaintiff from obtaining unaccompanied access to any ASH residents or facilities.

33. ASH civil campus reception area security staff additionally informed Plaintiff that ASH's standard procedure requires that all visitors be accompanied by a hospital staff member during Plaintiff's September 27, 2017 visit to ASH.

34. Plaintiff was denied reasonable unaccompanied access to ASH facilities and residents during multiple monitoring visits in 2018, including monitoring visits which Plaintiff conducted on January 12, January 18, February 5, February 14, February 23, March 20, April 11, June 26, August 8, and August 22, 2018.

35. In addition to monitoring visits, Plaintiff visited an ASH resident on March 16, 2018 after the resident requested ACDL's assistance, and Plaintiff was denied unaccompanied access to the resident.

36. Defendants did not provide any written reasons for the denial of unaccompanied access to ASH facilities and residents during Plaintiff's visits to ASH in 2018.

37. Plaintiff's April 11, 2018 visit was to the ASH forensic campus to meet with a resident. The ASH Patient Rights Advocate accompanied Plaintiff during this meeting. The ASH forensic campus resident with whom Plaintiff was meeting requested that the ASH Patient Rights Advocate allow the resident to meet privately with Plaintiff. The ASH Patient Rights Advocate stepped away from the meeting, but was close enough to Plaintiff and the resident to hear the conversation between Plaintiff and the resident.

38. During the April 11, 2018 visit, Plaintiff made a request to the ASH Patient Rights Advocate to be granted unaccompanied access to the ASH civil campus facilities and residents, and Plaintiff's request was denied.

39. On April 11, 2018, Plaintiff asked the ASH Patient Rights Advocate if there was any scenario in which Plaintiff would be granted unaccompanied access to ASH facilities and residents, and the Patient Rights Advocate answered "no."

40. When scheduling Plaintiff's August 8, 2018 monitoring visit to the ASH forensic campus, Plaintiff requested reasonable unaccompanied access to four residents for the purpose of private meetings between Plaintiff and each of these four residents individually, and ASH denied Plaintiff reasonable unaccompanied access to three of these residents.

41. On August 14, 2018, Plaintiff requested Defendants provide Plaintiff with a written statement of reasons for the denial of unaccompanied access to ASH residents during Plaintiff's August 8, 2018 monitoring visit, and Defendants denied this request.

42. More recently, Plaintiff requested unaccompanied access to ASH forensic campus patient, CF, in the course of Plaintiff's monitoring activities at ASH on January 9, 2019; and ASH denied Plaintiff's request, citing safety concerns.

43. Upon the denial of Plaintiff's request for unaccompanied access to CF, Plaintiff requested unaccompanied access to CF in an administrative separation room on the ASH forensic campus, which would provide a barrier between Plaintiff's staff and CF.

44. ASH made no effort to determine whether an administrative separation room was available, resulting in a denial of Plaintiff's request for unaccompanied access to CF in an administrative separation room.

45. Plaintiff additionally received a complaint of abuse from ASH forensic campus patient, IC, and Plaintiff opened an investigation into the alleged abuse; and, on February 8, 2019, Plaintiff requested unaccompanied access to IC.

46. Upon Plaintiff's request for unaccompanied access to IC, ASH denied Plaintiff's request, citing safety concerns.

47. In order to alleviate ASH's safety concerns, Plaintiff's staff requested that ASH allow Plaintiff unaccompanied access to IC in an administrative separation room, which would provide a barrier between IC and Plaintiff's staff. ASH denied this request.

48. Plaintiff also recently received a report of sexual abuse from ASH patient, GV, and Plaintiff opened an investigation into the alleged sexual abuse; and, on February 20, 2019, Plaintiff requested unaccompanied access to GV.

49. ASH denied Plaintiff's request for unaccompanied access to GV, and the ASH Patient Rights Advocate informed Plaintiff that ASH must be given advance notice any time Plaintiff intends to gain unaccompanied access to ASH patients

and any such access would be contingent on the approval of the patient's treatment team.

## II. DENIAL OF PLAINTIFF'S ACCESS TO RECORDS

50. Plaintiff is entrusted with the authority to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." See 42 U.S.C. § 10805(a)(1)(A).

51. In order to carry out investigations of abuse and neglect, Plaintiff has the authority to have access to all records of any individual (including an individual who has died or whose whereabouts are unknown):

> A. who by reason of the mental or physical condition of such individual is unable to authorize Plaintiff to have access to the records;
>
> B. who does not have a legal guardian, conservator, or other legal representative; and
>
> C. with respect to whom Plaintiff has probable cause to believe that such individual has been subject to abuse or neglect. See 42 U.S.C. § 10805(a)(4)(B); 42 C.F.R. § 51.41(b).

52. As a P&A, Plaintiff is the final arbiter under the PAIMI Act to determine whether probable cause of abuse and neglect exists. See Arizona Center for Disability Law v. Allen, 197 F.R.D. 689, 693 (D. Ariz. 2000).

53. On or about May 11, 2015, ASH civil campus resident Barbara West ("Ms. West") was allegedly able to climb onto a platform from which she jumped, breaking her neck. Ms. West subsequently died from her injuries.

54. Plaintiff was made aware of Ms. West's injury and subsequent death by a local news report. Upon learning of Ms. West's injury and death, Plaintiff determined that there is probable cause to believe that Ms. West was a victim of abuse and

neglect by ASH staff, and Plaintiff began an abuse and neglect investigation regarding Ms. West's injury and death.

55. On September 14, 2016, Plaintiff requested ASH provide all clinical records of Ms. West, any records relating to any internal reviews resulting from the incident that caused Ms. West's injury and death, any peer review records resulting from this incident, and any records pertaining to any investigation of this incident conducted by any State agency.

56. On October 28, 2016, ASH denied Plaintiff access to any peer review records regarding Ms. West and the events that caused her death.

57. In a demand letter sent to Defendants' counsel on May 26, 2017, Plaintiff renewed its request for all clinical records of Ms. West, any records relating to any internal reviews resulting from the incident that caused Ms. West's injury and death, any peer review records resulting from this incident, and any records pertaining to any investigation of this incident conducted by any State agency.

58. In its June 15, 2017 response to Plaintiff, Defendants reiterated that Defendants would not grant Plaintiff any access to peer review records pertaining to Ms. West's injury and death.

59. On April 23, 2018, Plaintiff sent demand letters to both Defendants, which included an explanation of Defendants' obligation to provide Plaintiff peer review records relevant to abuse and neglect investigations being conducted by Plaintiff regarding ASH residents.

60. Defendants responded to Plaintiff's April 23, 2018 demand letter on May 7, 2018. In their response, Defendants simply described ASH and the population that ASH serves.

61. The parties met and conferred regarding this matter on June 26, 2018 and August 6, 2018, but were unable to arrive at a satisfactory resolution of the matter.

62. On August 10, 2018, Defendants denied Plaintiff access to any and all records, including peer review records, regarding Ms. West.

## STATEMENT OF CLAIMS

### Count I. Defendants Continue To Deny Plaintiff Reasonable Unaccompanied Access to Arizona State Hospital Facilities And Residents In Violation Of Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. 10801 et seq.

63. Plaintiff repeats and realleges all preceding paragraphs in this Complaint.

64. The PAIMI Act requires that Plaintiff "have access to facilities in the State providing care or treatment." 42 U.S.C. § 10805(a)(3).

65. Defendants are required to provide Plaintiff with access to ASH because ASH is a facility under the PAIMI Act, and ASH provides care and treatment for persons with mental illness. 42 U.S.C. § 10802(3); 42 U.S.C. § 10805(a)(3).

66. The PAIMI Act authorizes Plaintiff to have reasonable unaccompanied access to all areas of ASH which are used by residents or are accessible to residents because ASH is a facility in the State which renders care or treatment for persons with mental illness. See 42 C.F.R. § 51.42(b).

67. 42 C.F.R. § 51.42(b) authorizes Plaintiff to have reasonable unaccompanied access to ASH residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. See Id.

68. The PAIMI Act requires that unaccompanied access pursuant to 42 C.F.R. § 51.42(b) include the opportunity to interview any ASH service recipient, employee, the person thought to be the victim of abuse or neglect, or other persons who Plaintiff might reasonably believe to have knowledge of the incident under investigation. Id.

69. ASH is required to afford Plaintiff, upon request, the access described in Paragraphs 50 through 54 of this complaint when:

   A. An incident of abuse or neglect is reported or a complaint is made to Plaintiff;

   B. Plaintiff determines there is probable cause to believe that an incident has or may have occurred; or

   C. Plaintiff determines that there is or may be imminent danger of serious abuse or neglect of an ASH resident. See 42 C.F.R. § 51.42(b).

70. Pursuant to the PAIMI Act, Plaintiff is additionally guaranteed the authority to have reasonable unaccompanied access to ASH, including all areas that are used by residents or are accessible to residents, to ASH programs, and to ASH residents at reasonable times, which at a minimum include normal visiting hours and working hours, for the purposes of:

   A. Providing ASH residents with information and training about individual rights and the protection and advocacy services available from Plaintiff;

   B. Providing the name, address, and telephone number of Plaintiff;

   C. Providing ASH residents information about, and referral to, programs that can address the needs of persons with mental illness;

   D. Monitoring ASH's compliance with respect to the rights and safety of residents; and

   E. Inspecting, viewing and photographing all areas of ASH that are accessible to residents. See 42 C.F.R. § 51.42(c).

71. Plaintiff's unaccompanied access to ASH residents includes "the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person. Residents include minors or adults who have a legal guardians or conservators." 42 C.F.R. § 51.42(d).

72. Despite Plaintiff's numerous requests to obtain reasonable unaccompanied access to ASH facilities and residents, Defendants continue to arbitrarily deny Plaintiff its legal authority to have reasonable unaccompanied access to ASH facilities and residents. See 42 C.F.R. § 51.42.

73. If Plaintiff's access to ASH facilities, programs, records or residents, as defined in the PAIMI Act, is delayed or denied, Defendants must promptly provide Plaintiff with a written statement of reasons, including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian or other legal representative of a person with mental illness. See 42 C.F.R. § 51.43.

74. Defendants are prohibited from delaying or denying Plaintiff's access to ASH facilities, records or residents without prompt provision of written statements of the reasons for the denial. See Id.

75. Defendants' refusal to allow Plaintiff reasonable unaccompanied access to the residents and facilities of ASH violates the PAIMI Act by denying Plaintiff its right to fulfill its statutory mandates to investigate abuse and neglect, and protect and advocate for the rights of persons with mental illness. See 42 U.S.C. § 10801; 42 U.S.C § 10805.

76. Defendants' refusal to allow Plaintiff reasonable unaccompanied access to the residents and facilities of ASH also violates the PAIMI Act by denying Plaintiff its right to provide ASH residents information about Plaintiff's services and contact information; provide ASH residents information about the legal rights of residents; monitor compliance with respect to the rights and safety of ASH residents; inspect, view and photograph all areas of ASH that are accessible to residents; and to meet privately with ASH residents. 42 C.F.R. § 51.42.

77. Defendants have also violated the PAIMI Act Defendants' failure to promptly provide Plaintiff with a written statement of reasons when Plaintiff's access to ASH facilities or residents is delayed or denied. 42 C.F.R. § 51.43.

**Count II. Defendants Continue To Deny Plaintiff Access To Records In Violation Of Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. 10801 et seq.**

78. Plaintiff repeats and realleges all preceding paragraphs in this Complaint.

79. Pursuant to the PAIMI Act, Plaintiff has the statutory authority to conduct an abuse and neglect investigation regarding the death of former ASH patient Ms. West because Plaintiff has probable cause to believe that Ms. West was subject to abuse or neglect and died as a result. 42 U.S.C. § 10805(a)(1)(A).

80. Although Ms. West was the ward of a guardian appointed by the Superior Court of Maricopa County, Arizona, Ms. West is no longer under guardianship because the guardianship terminated on the death of Ms. West. See A.R.S. § 14-5306.

81. Plaintiff has the authority to access all records of Ms. West, even if she is deceased, because:

    A. Ms. West, due to a physical condition (her death), is unable to authorize ACDL to have access to her records;

    B. Ms. West does not have a legal guardian, conservator or other legal representative; and

    C. Plaintiff has probable cause to believe that Ms. West was subject to abuse or neglect when she was a resident of ASH. See 42 U.S.C. § 10805(a)(4).

82. Plaintiff's access to all records of Ms. West includes reports prepared by ASH staff regarding Ms. West, reports prepared by ADHS that describe incidents of abuse, neglect or injury of Ms. West, and reports prepared by ADHS that describe the steps taken to investigate such incidents. 42 U.S.C. § 10806(b)(3)(A).

83. Plaintiff has access to peer review records regarding Ms. West, which were prepared by ASH staff or ADHS, because the PAIMI Act definition of records encompasses peer review records. See Pennsylvania Protection and Advocacy, Inc. v. Houstoun, 228 F.3d 423, 427 (3d Cir., 2000); Center for Legal Advocacy v. Hammons, 323 F.3d 1262, 1270 (3d Cir. 2003); Protection & Advocacy for Persons with Disabilities, Conn. v. Mental Health & Addiction Services, 448 F.3d 119, 128 (2d Cir., 2006); Indiana Protection and Advocacy Services v. Indiana Family and Social Services Admin., 603 F.3d 365, 382 (7th Cir. 2010).

84. Plaintiff has access to ASH and ADHS peer review records regarding the injury of Ms. West and any investigations by ASH and ADHS into the injury regardless of any State law protecting peer review records from discovery because the PAIMI Act preempts any State law that gives ASH or ADHS the right to withhold peer review records. See Pennsylvania Protection and Advocacy, Inc. v. Houstoun, 228 F.3d 423, 428 (3d Cir. 2000); Center for Legal Advocacy v. Hammons, 323 F.3d 1262, 1273 (3d Cir. 2003); Matter of Disability Rights Idaho Request for Ada Cty. Coroner Records Relating to the Death of D.T., 168 F. Supp. 3d 1282, 1294 (D. Idaho 2016).

85. Defendants' denial of Plaintiff's request to access ASH records, including peer review records, regarding the injury of Ms. West, and peer review records regarding any investigations by ASH and ADHS into Ms. West's injury, violate Plaintiff's rights under the PAIMI Act by denying the access to records guaranteed to Plaintiff pursuant to the PAIMI Act, and thus preventing Plaintiff from fulfilling its statutory mandate to investigate incidents of abuse and neglect when Plaintiff has probable cause to believe that abuse and neglect has occurred. 42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 10805(a)(4).

**RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court:

A. Issue a declaratory judgment that Defendants are in violation of the PAIMI Act for denying Plaintiff reasonable unaccompanied access to all parts of the Arizona State Hospital that are used by, and accessible to, any residents of the Arizona State Hospital.

B. Issue a declaratory judgment that Defendants are in violation of the PAIMI Act for denying Plaintiff unaccompanied access to residents of the Arizona State Hospital.

C. Take judicial notice that Ms. West is unable to grant Plaintiff access to her records, Ms. West is not under guardianship because the guardianship terminated on Ms. West's death, and that Ms. West does not have any other legal representative.

D. Issue a declaratory judgment that Defendants are in violation of the PAIMI Act for denying Plaintiff access to the records, as defined by the PAIMI Act, of Ms. West.

E. Issue a declaratory judgment that Defendants are in violation of the PAIMI Act for denying Plaintiff access to peer review records of Ms. West that include, but are not limited to, the following:

(1) reports prepared by Defendants or their designees regarding Ms. West; (2) reports prepared by Defendants or their designees that describe incidents of abuse, neglect or injury of Ms. West; and (3) reports prepared by Defendants or their designees that describe the steps taken to investigate such incidents.

F. Issue a permanent injunction enjoining Defendants from further denying Plaintiff unaccompanied access to any parts of the Arizona State Hospital that are used by, and accessible to, any residents of the Arizona State Hospital.

G. Issue a permanent injunction enjoining Defendants from further denying Plaintiff unaccompanied access to residents of the Arizona State Hospital.

H. Issue an order requiring Defendants to provide Plaintiff all records, as defined by the PAIMI Act, of Ms. West.

I. Issue an order requiring Defendants to provide Plaintiff peer review records of Ms. West that include, but are not limited to, the following:

(1) reports prepared by Defendants or their designees regarding Ms. West; (2) reports prepared by Defendants or their designees that describe incidents of abuse, neglect or injury of Ms. West; and (3) reports prepared by Defendants or their designees that describe the steps taken to investigate such incidents.

J. Issue a permanent injunction enjoining Defendants from denying any future requests for records and peer review records made by Plaintiff in accordance with the PAIMI Act.

K. Issue an order requiring Defendants, in accordance with the PAIMI Act, to promptly provide Plaintiff with a written statement of reasons if Plaintiff's access to facilities, programs, residents or records is delayed or denied.

L. Issue a permanent injunction enjoining Defendants from delaying or denying access to facilities, records or residents without the prompt provision of written statements of the reasons for the denial.

M. Award Plaintiff its reasonable attorney fees and costs incurred in bringing this action; and

N. Award any and all other relief that this Court may deem necessary and appropriate.

RESPECTFULLY SUBMITTED this 11th day of March, 2018.

**ARIZONA CENTER FOR DISABILITY LAW**

/s/Asim Dietrich
Asim Dietrich
Chris Carlsen
Arizona Center for Disability Law
5025 E. Washington St., Suite 202
Phoenix, Arizona 85034
*Attorneys for Plaintiff*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on March 11, 2019, I electronically transmitted the foregoing documents to the Clerk's Office using the CM/ECF System for filing and transmittal of an Amended Complaint to the following CM/ECF registrants:

Copy mailed the same date to:

HONORABLE BRIDGET S. BADE
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 324
401 West Washington Street, SPC 76
Phoenix, Arizona 85003-2120

Louis Caputo (025398)
Aubrey Joy Corcoran (025423)
Kevin D. Ray (007485)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, AZ 85004
Telephone (602) 542-8349
Louis.Caputo@azag.gov
AubreyJoy.Corcoran@azag.gov
Kevin.Ray@azag.gov
EducationHealth@azag.gov

/s/ Tanika Sherman